IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL MATTIA | : | CIVIL ACTION |
| v. | : | |
| MARY LOU BAKER | : | NO. 17-4298 |

MEMORANDUM

Bartle, J.                                                December 17, 2018

Plaintiff Paul Mattia brings this action against defendant Mary Lou Baker in her individual capacity for First Amendment retaliation in violation of 42 U.S.C. § 1983. Before the court is the motion of Baker for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). We view the facts and draw all inferences in favor of the nonmoving party. See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004). Summary judgment is granted where

there is insufficient record evidence for a reasonable factfinder to find for the nonmovant. See Anderson, 477 U.S. at 252. "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." Id. In addition, Rule 56(e)(2) provides "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

II

The following facts are undisputed. Mattia is employed as a Hearing Officer II ("HO II") handling support matters in the Family Court Division of the First Judicial District of Pennsylvania. There are approximately sixty HO IIs. Promotion from HO I to HO II is automatic based on longevity and meeting expectations in yearly performance evaluations. The next position above HO II is HO III, which is a supervisory position. There is a limited number of HO III positions and to be eligible to apply for such a position, the employee must have a minimum number of years of experience as an HO II and must meet expectations on his or her performance evaluations.

In order to be promoted to an HO III, the employee must then be interviewed by a panel made up of four Directors of the

Family Court and defendant Baker, who is the Deputy Court Administrator for the Family Court. The panel asks each candidate the same set of questions. The interview is designed to allow the panel to assess a candidate's supervisory ability, which includes the ability to communicate effectively and to maintain good working relationships. Each panel member gives the candidate an interview score of up to 100 points. Those scores are then averaged, with equal weight being given to the score of each panel member. No panel member, including Baker, has the authority to override the group's recommendation. The panel then recommends the candidate with the highest interview score to the Administrative Judge of the Family Court, who makes the final decision on whom to promote.

In early 2016, Mattia applied for and was interviewed for an HO III position. Mattia had been passed over for the promotion in years past, but Baker encouraged Mattia to apply again. Mattia was one of twelve candidates who were interviewed. He received an average interview score of 75.2, which placed him sixth out of the twelve candidates. The top four candidates received average interview scores of over 90.

There is no dispute that Mattia's work as an HO II was excellent. There is also no dispute that Mattia exceeded the

minimum requirement of service time as an HO II and had met or exceeded expectations on his annual performance reviews.[1]

At the time of the interview, Mattia was serving as a shop steward for his union. As a shop steward, Mattia accompanied other HO IIs to disciplinary proceedings and assisted them with employment issues, such as attendance and leave, promotions, and seeking information from human resources.

In the end, the two candidates with the highest average interview scores, which were over 90, were promoted to HO III. One of the candidates promoted, Atiba Askew, was an active member of the union who received an AFL-CIO certification in leadership training, was a member of the "Next Wave" program that promotes internal union growth and leadership, and served as a union delegate. Shortly after his promotion to HO III, Askew became a shop steward, the same union position as held by Mattia. Two of the other candidates who were not promoted to HO III, Tabitha Dorchery and Stephanie James, were also shop stewards. Dorchery and James placed eleventh and seventh on their interview scores out of the twelve candidates, respectively. The evidence also shows

---

1. Mattia asserts that his 2016 performance evaluation was downgraded from "exceeds expectations" in all areas to "meets expectations" in most categories. The evidence shows that the initial evaluation was made by his supervisor, Laura Cavanaugh, and that Mattia's director Joseph McHugh, not Baker, ordered it changed. Regardless, this fact is irrelevant as there is no evidence that the performance evaluation is considered in the decision whether to promote to HO III.

that Baker has participated in panels which recommended the promotion of union stewards to supervisory positions on at least four occasions.

In the complaint, Mattia asserts that he was denied the HO III position because of these union activities. However, in his deposition, Mattia also suggested that he was denied the promotion simply because Baker does not like him, and that he does not know why. He also suggested that his age and/or nationality played a role in the decision not to promote him.

On September 25, 2017, Mattia commenced this action against Baker in her individual and official capacity as well as against the City of Philadelphia, the First Judicial District of Philadelphia, and John Doe defendants. Thereafter he filed an amended complaint, which alleged a claim against only Baker in her individual capacity. Mattia seeks damages as well as injunctive and equitable relief.[2]

III

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or

---

2. In opposition to the motion for summary judgment, Mattia states that he was placed on administrative leave on November 30, 2018 after threatening to make a complaint to the Pennsylvania Attorney General regarding the promotion of Baker's son to an HO III position. Mattia's complaint related to nepotism and thus is irrelevant to his claim here, which is that he was retaliated against for his union membership.

> causes to be subjected, any citizen of the
> United States . . . to the deprivation of
> any rights, privileges, or immunities
> secured by the Constitution and laws, shall
> be liable to the party injured.

Section 1983 "is not a source of substantive rights but a vehicle for vindicating rights conferred by the U.S. Constitution or by federal statute." DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005) (citing Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979)). Thus, to establish liability under § 1983, Mattia must show that Baker, while acting under color of state law, deprived him of rights or privileges secured by the Constitution or laws of the United States. See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 579 (3d Cir. 2004). The parties do not dispute that Baker was acting under color of state law in her role as Deputy Court Administrator at all relevant times.

The First Amendment of the Constitution provides: "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. A public employee such as Mattia is entitled to exercise his rights under the First Amendment of the United States Constitution without fear of retaliation by his or her employer. Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003). To prevail on his claim, Mattia must establish: (1) his conduct was protected under the First Amendment; (2) that Baker engaged in retaliatory action against

him; and (3) a causal connection between the protected conduct and the retaliatory action. Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).

Mattia alleges that he was not promoted in retaliation for his "involvement in the local union." It is well-established that "a public employee possesses a First Amendment right to associate with a union." Palardy v. Twp. of Millburn, 906 F.3d 76, 84 (3d Cir. 2018) (citing Smith v. Ark. State Highway Emp., 441 U.S. 463, 465 (1979)). Thus, Mattia's association with a union is activity protected under the First Amendment.[3] In addition, denial of a promotion can be deemed "retaliatory conduct . . . sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." See Thomas, 463 F.3d at 296 (quoting McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006)).

Mattia's claim fails, however, because he has failed to raise a genuine dispute of material fact regarding whether that allegedly retaliatory action was causally connected to his union membership. To satisfy the causation element, Mattia must

---

3. Baker contends that she is entitled to summary judgment because Mattia has not shown that he spoke regarding a matter of public concern in connection with his union activity. As Mattia correctly asserts, this requirement applies only to First Amendment retaliation claims based on speech, which are analyzed differently from claims based on association such as is presented here. See Palardy, 906 F.3d at 81.

show that his protected activity, that is, his union membership, was a "substantial factor" in the alleged retaliatory action. See Gorum v. Sessoms, 561 F.3d 179, 184 (3d Cir. 2009). As evidence of causation, a plaintiff generally must show either: (1) "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action"; or (2) "a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997)). In the absence of such evidence, a plaintiff must establish "that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)). As our Court of Appeals has instructed, we "must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate." Id.

In support of her motion for summary judgment, Baker has submitted affidavits from each member of the panel who conducted Mattia's interview for the HO III position. Each of the five members, including Baker, has stated under oath that HO

III candidates are selected for promotion based on their overall score in the panel interview.  Each panel member provides a score for the candidate which is then averaged to create a total score.  The evidence shows that equal weight is given to each panel member's score and that Baker does not wield any extra influence or authority in the panel's recommendation.  Thus, the failure of Mattia to receive a promotion to HO III could not be due to retaliation by Baker individually but was instead based on Mattia's overall interview score as determined by the panel as a whole.

Our Court of Appeals confronted a similar situation in Watson v. Borough of Susquehanna, 532 F. App'x 233, 236 (3d Cir. 2013).  There, the Court held that an individual defendant could not be held liable for retaliation where the plaintiff's termination was the result of a group decision that would have been the same regardless of the individual defendant's vote:

> [I]f a majority of defendants prove that their individual votes against the plaintiff would have been the same irrespective of the plaintiff's protected conduct, then the defendants as a group cannot be held liable, and no individual defendant, even one whose proof falls short, can be so held because causation is absent. . . .  [E]ven if some defendants based their decision solely on impermissible grounds, a finding that a majority of defendants acted adversely to the plaintiff on legitimate grounds is sufficient for all to escape liability.

Id. (quoting Coogan v. Smyers, 134 F.3d 479, 485 (2d Cir. 1998)).

Poor performance in an interview is recognized as a legitimate, non-discriminatory reason for failure to hire or promote. See, e.g., Carr v. New Jersey, 534 F. App'x 149, 152 (3d Cir. 2013); McCann v. Astrue, 293 F. App'x 848, 852 (3d Cir. 2008). The evidence presented shows that, although Mattia was qualified for the HO III position, he was ranked sixth out of twelve candidates based on his interview performance. Even if Baker had given him a maximum score of 100 points, Mattia still would not have scored sufficiently high in relation to the other candidates to be promoted.[4] Thus, any action by Baker was not a substantial factor in the decision to not promote Mattia.

There is also insufficient evidence to connect the alleged retaliation by Baker to Mattia's union membership. The vast majority of HO IIs within the First Judicial District belong to the union and thus nearly all of the individuals promoted to HO III are associated with the union. In fact, Atiba Askew, one of the two candidates who were promoted to HO

---

4. To the extent that Mattia continues to assert that Baker has final authority over promotions, he relies solely on his own belief and on the deposition testimony of individuals who do not have first-hand knowledge of the interview process. Such speculation and hearsay are not sufficient to raise a genuine dispute of material fact regarding the interview process. Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009); see also Fed. R. Civ. P. 56(e)(2);.

III over Mattia, was an active member of the union who became a shop steward shortly after his promotion. The evidence also shows that Baker has participated in or recommended the promotion of other union shop stewards to HO III or other supervisory positions within the First Judicial District. Mattia himself admitted in his deposition that he did not "have the faintest clue" why Baker would not want him promoted. He also suggested that promotions were based on "who you know" and that perhaps his failure to be promoted was due to discrimination on the basis of age or nationality.

Mattia has pointed to two incidents to support his position that Baker harbors animosity towards him based on his union affiliation. The first is that Baker did not allow the union to have food at one meeting. Baker has produced uncontradicted evidence that this decision was made by Baker's supervisor. The second is that at one point, Baker wanted to choose the union shop steward to represent employees in grievance hearings instead of allowing the employee to pick the steward himself. However, the evidence shows that once it was pointed out to Baker that the employees were allowed to pick which shop steward to represent them, hearings went forward with the employees' chosen steward. These two isolated and insignificant incidents are insufficient to establish animus by Baker towards Mattia due to his union membership.

There is no dispute that Mattia's work as an HO II was excellent and the evidence suggests that Mattia would make a fine HO III. Mattia may believe that the decision to promote should be based on criteria other than the panel interview or that Baker personally dislikes him. He may also believe that the promotion process is influenced by nepotism or cronyism. But personal animus or an unwise business decision, without more, does not constitute a violation of one's constitutional rights. See Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1109 (3d Cir. 1997); Vasbinder v. Sec'y Dep't of Veterans Affairs, 487 F. App'x 746, 750 (3d Cir. 2012). Based on the record presented here, a rational jury simply could not conclude that the failure to promote Mattia was based on his union membership.

IV

In support of her motion for summary judgment, Baker has also raised the defense of qualified immunity. The doctrine of qualified immunity insulates government officials who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To determine whether an official is entitled to qualified immunity, we examine: (1) whether the

facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001); Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010).  Courts have discretion to address these two prongs in any order.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  Because we determine that Mattia has not produced any evidence that a violation of his First Amendment rights occurred, we need not decide whether Baker is entitled to qualified immunity because the right was not clearly established.  See id. at 236-42.

V

Accordingly, the motion of Baker for summary judgment will be granted.[5]

---

5. To the extent plaintiff's complaint can be read to assert a claim under state law, Baker as a state employee has immunity from such claims.  See 1 Pa. Cons. Stat. Ann. § 2310.